# In the United States District Court
# for the Southern District of Georgia
# Brunswick Division

| | | |
|---|---|---|
| FRT 2011-1 TRUST, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | CV 213-107 |
| | * | |
| eHEALTHSCREEN, LLC; MACK W. | * | |
| BRYSON; and JANE O. BRYSON, | * | |
| | * | |
| Defendants. | * | |

## ORDER

This matter comes before the Court on several fully briefed dispositive motions: Defendant eHealthscreen, LLC's ("eHealthscreen") Motion for Summary Judgment Against Plaintiff FRT 2011-1 Trust ("Plaintiff") (dkt. no. 57); Plaintiff's Motion for Partial Summary Judgment Against eHealthscreen (dkt. no. 65); eHealthscreen's Motion for Summary Judgment on Crossclaims and for Partial Summary Judgment on Counterclaims to Crossclaims (dkt. no. 55); and Defendants Mack W. Bryson ("Mack Bryson") and Jane O. Bryson's (collectively, the "Brysons") Motion for Partial Summary Judgment on Crossclaims and Counterclaims (dkt. no. 59).

For the reasons that follow, eHealthscreen's Motion for Summary Judgment Against Plaintiff (dkt. no. 57) is **GRANTED**, and

Plaintiff's cross-Motion for Partial Summary Judgment against this Defendant (dkt. no. 65) is **DENIED**. Additionally, eHealthscreen's Motion seeking summary judgment on the Brysons' crossclaims and partial summary judgment on its counterclaims (dkt. no. 55) is **GRANTED**. The Brysons' Motion for Partial Summary Judgment on Crossclaims and Counterclaims (dkt. no. 59) is thus **DENIED**.[1]

## BACKGROUND[2]

Plaintiff is a Delaware statutory trust that claims to have a security interest in the Brysons' real property (the "Property") and seeks to foreclose upon the same. See eHealthscreen's SMF 2, ¶¶ 43-44; Pl.'s SMF, ¶¶ 61-62. The

---

[1] The docket sheet for this case shows that the Brysons, in addition to being party-Defendants, are Cross Claimants and Cross Defendants, based on their crossclaims against eHealthscreen. The Clerk of Court is hereby **DIRECTED** to correct the docket to reflect that the Brysons are the Cross Claimants, while eHealthscreen is the Cross Defendant, with respect to these claims. To the extent that the docket lists eHealthscreen as a Counter Claimant and the Brysons as Counter Defendants on the basis of eHealthscreen's counterclaims, the docket is correct and need not be changed.

[2] Each movant has submitted a statement of material facts in support of its pending motion. See Dkt. No. 55-3 (eHealthscreen's Statement of Uncontested Material Facts, hereinafter "eHealthscreen's SMF 1"); Dkt. No. 57-5 (eHealthscreen's Statement of Uncontested Material Facts, hereinafter "eHealthscreen's SMF 2"); Dkt. No. 59 (Brysons' Statement of Undisputed Material Facts, hereinafter "Brysons' SMF"); Dkt. No. 65-2 (Plaintiff's Statement of Material Facts, hereinafter "Pl.'s SMF"). The party opposing each motion has filed a response to the statement of material facts. Dkt. Nos. 72, 75-1, 79-4, 80. While the Court, for ease of exposition, cites only to the movants' factual statements for the purposes of this Order, it does so only to the extent that these statements are consistent with the responses and specifically notes any factual contentions about which the parties disagree.

AO 72A
(Rev. 8/82)

Brysons own and currently reside on the Property, which is located in Waverly, Georgia. Brysons' SMF, ¶¶ 1-2. eHealthscreen is a Florida limited liability company that also purports to be a secured creditor of the Brysons and has attempted to exercise its alleged rights in the subject Property. eHealthscreen's SMF 1, ¶¶ 17-18, 30; Brysons' SMF, ¶ 3; Pl.'s SMF, ¶ 6.

## I. Mack Bryson's Equity Partnership in HealthScreen Disease Management, LLC ("HSDM")

In May 2005, HSDM was formed and acquired Mack Bryson's company, Currahee Health Benefits Solutions, Inc. Dkt. No. 71, Ex. A (Affidavit of Mack Bryson, hereinafter "Mack Bryson Aff."), ¶ 2. Mack Bryson became an equity partner with a twenty percent share in HSDM and also agreed to serve as its Chief Executive Officer. eHealthscreen's SMF 1, ¶ 1; Brysons' SMF, ¶ 4. Aside from Mack Bryson, the equity members of HSDM included Anthony Campbell ("Campbell"), J. Melvin Deese ("Deese"), William McArthur ("McArthur"), and Charles Hendrix ("Hendrix"). Brysons' SMF, ¶ 3; Pl.'s SMF, ¶ 7.

A letter dated May 6, 2005, sets forth the agreed-upon terms of Mack Bryson's relationship with HSDM. eHealthscreen's SMF 1, ¶ 2. The letter states, in relevant part:

> 2.   You will draw an advance of distributions in the
>      form of a salary in the amount of $25,000 per
>      month. You will not receive any further
>      distributions until each of the other equity

AO 72A
(Rev. 8/82)

members of the [c]ompany have received
distributions in an amount equal to the amount of
distributions you have drawn.  An adjustment for
reasonable salary compensation will be credited
in the calculations at such time of distribution.

. . . .

11.  The [c]ompany will pay the premiums on your
     Massachusetts Mutual Life insurance policy in
     the amount of $2,305 per month for twelve months
     from the date hereof.

12.  The [c]ompany will transfer the title of the
     [c]ompany[-]owned Chevrolet Silverado to you
     once the bank loan secured by the vehicle is paid
     in full.

13.  The [c]ompany will employ David Stephens at a
     salary of $2500 per month for a period of time up
     to 18 months.

     The amounts paid by the [c]ompany pursuant to
items numbered 11, 12, 13 above will be accrued on the
[c]ompany's books as an account receivable due from
you to the [c]ompany to be deducted from your future
equity member distributions.

Dkt. No. 55, Ex. A.

Upon Mack Bryson becoming an equity member, HSDM began

making the $25,000 monthly payment to him as an "advance of

distributions in the form of a salary," as well as the other

payments on his behalf as stipulated in paragraphs eleven,

twelve, and thirteen.  eHealthscreen's SMF 1, ¶¶ 6-7.  HSDM took

tax deductions for these payments, and state and federal taxes

were withheld from Mack Bryson's monthly paychecks.  Mack Bryson

Aff., ¶ 8.

AO 72A
(Rev. 8/82)

## II. HSDM and eHealthscreen

The four equity members of HSDM other than Mack Bryson—namely, Campbell, Deese, McArthur, and Hendrix—formed and became partners of eHealthscreen in September 2006. Brysons' SMF, ¶ 4; Pl.'s SMF, ¶ 8; Mack Bryson Aff., ¶¶ 6, 12. Mack Bryson was not a member of eHealthscreen. Brysons' SMF, ¶ 4; Pl.'s SMF, ¶ 8; Mack Bryson Aff., ¶ 6. HSDM and eHealthscreen were organized and operated as entirely separate and distinct legal entities. Brysons' SMF, ¶ 11. eHealthscreen nevertheless maintains that it and HSDM operated as a joint venture, because it existed only to provide services to HSDM. Dkt. No. 75-1, ¶ 11.

Hendrix served as President of eHealthscreen and oversaw most of its day-to-day operations. Pl.'s SMF, ¶ 10. Campbell was Vice Chairman of eHealthscreen and, as a licensed attorney, also handled at least some of the company's legal and other matters. Id. at ¶ 9. For example, according to McArthur, Campbell was the only member who wrote documents or letters on behalf of eHealthscreen. Id. at ¶ 56. As to some matters, the other members needed to review and agree with Campbell's work prior to him taking action; however, under certain circumstances, the other members allowed Campbell to act on behalf of eHealthscreen without their express, written authority. Id. at ¶¶ 9, 48.

AO 72A
(Rev. 8/82)

## III. The Property and the Secured Promissory Note in Favor of eHealthscreen

In July and September 2006, the Brysons refinanced the Property with First Chatham Bank ("FCB") and, in doing so, executed two deeds to secure debt granting liens on the Property to FCB. eHealthscreen's SMF 2, ¶¶ 2-3; Pl.'s SMF, ¶¶ 3-4.

In November 2006, two members of HSDM informed Mack Bryson that he needed to execute a secured promissory note agreeing to pay eHealthscreen certain sums of money or else his relationship with HSDM would be severed. eHealthscreen's SMF 1, ¶¶ 10, 15-16. According to the HSDM members, they did so because HSDM had been making steady "advance[s] of distributions in the form of a salary" to Mack Bryson and other payments on his behalf as contemplated in the May 6, 2005, letter, while "no distributions were ever made to the members of HSDM." Id. at ¶¶ 3, 6-9. Thus, the HSDM members required that Mack Bryson promise to pay eHealthscreen these amounts, as well as any future amounts, because HSDM ultimately had not made any equity member distributions from which these amounts could be deducted. Id. at ¶¶ 10-12.

The Promissory Note, dated November 27, 2006, states, in pertinent part, as follows:

> FOR VALUE RECEIVED, Mack W. Bryson, an individual resident of 2310 Horsestamp Church Road, Waverly, Georgia 31565 ("Borrower") promises to pay, on the Maturity Date (defined below), to the order of

6

eHealthscreen, LLC, a Georgia limited liability company ("Lender"), at such place as the Lender may designate in writing, the principal sum of Five Hundred Fifty[-]Seven Thousand Five Hundred Eighty[-]One Dollars ($557,581.00) (the "Initial Principal Amount"), which sum was outstanding as of November 27, 2006[,] plus such further sums as may have been or may hereafter be advanced by Lender to Borrower as listed or to be listed on the Schedule of Loans and Payments attached hereto, together with interest on such principal sums. This Promissory Note is referred to herein as the "Note." As used herein, "Maturity Date" shall be the thirtieth (30th) day succeeding receipt by the Borrower of a written demand by Lender for payment hereunder.

Interest shall accrue on the principal sums advanced under this Note from the date each advance of principal was made as recorded on the Schedule of Loans and Payments attached hereof until paid at the annual rate of interest of eight percent (8%). Unless otherwise stated herein, all interest shall be due and payable on the Maturity Date. All interest accruing hereunder as to any advance of principal shall be computed on the basis of actual days elapsed, over a year of 365 days, from the effective date for the Initial Principal Amount as to such amount and from the date of each respective advance for all subsequent loans.

The Initial Principal Amount is intended to reflect, as the initial entry on the Schedule of Loans and Payments, the sums advanced by Lender to Borrower on or prior to the effective date hereof. As further loans or advances have been made or are made by Lender to Borrower, if any, such loans and advances shall be recorded on this Note on the Schedule of Loans and Advances. As payments are made of the sums due under this Note, an entry of same shall be recorded on the Schedule of Loans and Advances. Borrower shall maintain a duplicate copy of the Schedule of Loans and Advances, and periodically Lender and Borrower will verify and reconcile the entries on such Schedule.

. . . .

AO 72A
(Rev. 8/82)

Should it become necessary to collect this Note
through an attorney, by legal proceedings, or
otherwise, the undersigned[,] including endorsers,
promise(s) to pay all costs of collection, including
reasonable attorneys' fees.

This Note shall be secured by a Security Deed on the
[P]roperty located in the [C]ounty of Camden, [S]tate
of Georgia described on Exhibit "A" attached hereto
and made apart hereof. Lender shall have, in addition
to its remedies under this Note, all the remedies of a
holder of a security deed under the laws of the State
of Georgia.

Dkt. No. 54-2, pp. 1-2. The attached Security Deed conveys an
interest in the Brysons' Property to eHealthscreen as security
for Mack Bryson's payment on the Promissory Note. Id. at pp. 6,
8.

Mack Bryson signed the Promissory Note, and he and his wife
signed the Security Deed, in favor of eHealthscreen.
eHealthscreen's SMF 1, ¶¶ 17-18; Brysons' SMF, ¶ 6. In the
subsequent months, Mack Bryson's relationship with HSDM,
including his receipt of monthly payments, continued as it had
before. eHealthscreen's SMF 1, ¶ 20. Mack Bryson received
several additional payments from HSDM, and he initialed next to
the entries for these payments on the Schedule of Loans page of
the Promissory Note. See id. at ¶¶ 21-26.[3] As of December 20,

---

[3] The Schedule of Loans and Payments shows that Mack Bryson never
initialed the final two entries, dated November 16, 2007, and December
20, 2007, dkt. no. 54-2, p. 5; however, the Brysons do not dispute
that Mack Bryson received payments after the last initialed entry on
October 18, 2007, and do not challenge the extent to which these
amounts are reflected on the Schedule of Loans and Payments page, see
eHealthscreen's SMF 1, ¶¶ 25-27.

2007, the amount of principal owed under the Promissory Note had grown to $883,860.  Id. at ¶ 27.

The Brysons maintain that since the beginning of Mack Bryson's relationship with HSDM, all parties had understood "that [his] compensation was to be a salary."  Mack Bryson Aff., ¶ 8.  Mack Bryson contends that he "was never told [he] would have to repay any of [the] salary paid to [him]" and "would never have entered into an employment relationship with [HSDM] for the sole purpose of paying back a loan."  Id. at ¶ 7.  Further, he asserts that "at the time of [his] hiring[,] there were no discussions concerning what would occur if distributions were not made to the other partners," and it was never contemplated that eHealthscreen, a not-yet-formed company, would have any involvement with or benefit from his employment relationship with HSDM.  Id. at ¶¶ 9-12.  The Brysons allege that they nevertheless executed the Promissory Note and Security Deed in favor of eHealthscreen under duress and out of fear that HSDM would otherwise terminate Mack Bryson's employment and discontinue making payments to him.  eHealthscreen's SMF 1, ¶¶ 10, 17-18.

IV.  **Refinancing and Subordination Issues**

In early 2007, the Brysons sought to refinance their loan secured by the first FCB lien on the Property and contacted refinancing lender Resource Mortgage Banking, Ltd. ("Resource").

9

eHealthscreen's SMF 2, ¶¶ 5-6; Pl.'s SMF, ¶ 11. Resource retained a local attorney (the "closing attorney") to represent its interests and handle the closing of the refinancing transaction. eHealthscreen's SMF 2, ¶¶ 6-7; Pl.'s SMF, ¶¶ 11, 13. As an absolute condition precedent to extending funds to the Brysons, Resource required that it receive a first-position priority lien on the Property. Pl.'s SMF, ¶ 14. An updated title abstract listed the following encumbrances in order of priority: (1) the first FCB Security Deed recorded in July 2006; (2) the second FCB Security Deed recorded in September 2006; and (3) the eHealthscreen Security Deed recorded in January 2007. eHealthscreen's SMF 2, ¶¶ 10-11, 13; Pl.'s SMF, ¶ 13.

The closing attorney contacted FCB and obtained an agreement subordinating its second security interest in the Property to Resource's prospective interest. eHealthscreen's SMF 2, ¶¶ 9-11. The closing attorney then spoke with eHealthscreen members Campbell and Hendrix in June 2007, and Campbell made a handwritten note on a paper napkin stating that eHealthscreen would subordinate its interest to the Resource lien and faxed the note to the closing attorney. Id. at ¶ 24; Pl.'s SMF, ¶¶ 15, 26-27. While neither party viewed the handwritten note as a final subordination agreement, the closing attorney immediately closed on the refinancing transaction, at which time the Brysons executed a Security Deed granting

AO 72A
(Rev. 8/82)

Resource an interest in the Property. eHealthscreen's SMF 2, ¶¶
28-31; Pl.'s SMF, ¶¶ 29, 31. Although the closing attorney had
planned to send a formal subordination agreement to
eHealthscreen after the closing, he did not do so until October
2010. eHealthscreen's SMF 2, ¶¶ 36, 39; Pl.'s SMF, ¶ 35.
eHealthscreen never signed the formal agreement. Pl.'s SMF, ¶
36.

## V.    eHealthscreen's Attempt to Enforce Its Alleged Rights

HSDM had continued to make regular payments to Mack Bryson
until at least December 20, 2007, eHealthscreen's SMF 1, ¶ 28,
and terminated his employment on March 23, 2010, Brysons' SMF, ¶
7. Approximately one year later, on March 3, 2011,
eHealthscreen mailed Mack Bryson a demand letter seeking payment
of the principal balance of $883,860 under the Promissory Note.
eHealthscreen's SMF 1, ¶ 29; Brysons' SMF, ¶ 9. Mack Bryson
refused to comply with the demand for payment and denied that
eHealthscreen had any authority to enforce the Promissory Note
or to foreclose on the Property pursuant to the Security Deed.
eHealthscreen's SMF 1, ¶ 30; Brysons' SMF, ¶¶ 11-12. According
to the Brysons, there was no privity of contract between Mack
Bryson and eHealthscreen, and eHealthscreen never provided any
consideration, monetary or otherwise, in exchange for the
Promissory Note and Security Deed. Brysons' SMF, ¶¶ 10-11. On

AO 72A
(Rev. 8/82)

December 30, 2011, Campbell, Deese, McArthur, and Hendrix

dissolved HSDM in the State of Georgia.  Id. at ¶ 8.

## VI.  Further Filings in the Property Records

In April 2013, an individual claiming to be a servicer for

Plaintiff recorded a Missing Assignment Affidavit in the

property records.  Pl.'s SMF, ¶ 42.  The affidavit states that

Resource has assigned to Plaintiff the Security Deed that the

Brysons executed in its favor, id. at ¶ 43, but that "[r]epeated

attempts to locate the original assignment or to obtain the

replacement assignment have failed," dkt. no. 57-3, p. 3.  The

affidavit indicates that the assignment "has been lost without

recording or inadvertently not prepared," Pl.'s SMF, ¶ 44, and

thus purports to give record notice that an assignment of this

interest actually took place, dkt. no. 57-3, p. 3.  In October

of that year, eHealthscreen, attempting to document the alleged

priority of its lien, filed an Affidavit as to Facts Affecting

Title to Land asserting that it had not subordinated its

interest in the Brysons' Property to another lienholder.  Pl.'s

SMF, ¶¶ 39, 43; Dkt. No. 93, Ex. J.

## VII. Plaintiff's Filing of Suit

Plaintiff filed suit against eHealthscreen and the Brysons

in this Court on August 12, 2013, naming the Brysons as

Defendants only to the extent that Plaintiff's claims for relief

against eHealthscreen may affect their ownership interest in the

AO 72A
(Rev. 8/82)

Property. Dkt. No. 1, ¶ 8. In count one of the Complaint, Plaintiff seeks a declaratory judgment that its security interest in the Brysons' Property takes priority over that of eHealthscreen. Id. at ¶¶ 37-47. Plaintiff's counts two through four claim damages for breach of contract, promissory estoppel, and fraud, respectively, based on eHealthscreen's alleged agreement to subordinate its interest and subsequent refusal to do so. Id. at ¶¶ 48-65. In count five of the Complaint, Plaintiff requests an equitable subordination of eHealthscreen's interest, so as to move Plaintiff to first priority lienholder on the Property. Id. at ¶¶ 66-73. Finally, in count five, Plaintiff seeks to hold eHealthscreen liable for its attorney's fees and litigation costs pursuant to O.C.G.A. § 13-6-11. Id. at ¶ 74.

## VIII. Pending Motions

On November 15, 2013, the Brysons filed an Answer to Plaintiff's Complaint, as well as a Cross-Complaint against eHealthscreen. Dkt. No. 11. Count one of the Brysons' Cross-Complaint requests a declaratory judgment finding that the Promissory Note between Mack Bryson and eHealthscreen is invalid and unenforceable due to lack of consideration, and that eHealthscreen thus has no authority to foreclose on the Property under the related Security Deed. Id. at pp. 15-16. Count two seeks preliminary, interlocutory, and permanent injunctions

AO 72A
(Rev. 8/82)

against eHealthscreen's foreclosure on the Property, and count three claims entitlement to attorney's fees and costs under O.C.G.A. § 13-6-11. Id. at pp. 16–17.

eHealthscreen filed an Answer and various counterclaims in response to the Brysons' crossclaims on December 6, 2013. Dkt. No. 16. In addition to finding the Promissory Note and Security Deed valid, eHealthscreen asks that the Court hold Mack Bryson liable for breach of the Promissory Note, in the amount of principal and interest due thereunder. Id. at pp. 7–8. eHealthscreen also seeks the entry of a special lien on the Property and payment of its attorney's fees and costs in litigating the crossclaims and counterclaims. Id. at p. 8. The Brysons filed an Answer to eHealthscreen's counterclaims raising the affirmative defense of lack of consideration on December 24, 2013. Dkt. No. 20.

On August 26, 2014, eHealthscreen filed the instant Motion for Summary Judgment in its favor on the Brysons' crossclaims. Dkt. No. 55-1. eHealthscreen's Motion also requests partial summary judgment on its counterclaim against Mack Bryson for breach of the Promissory Note, specifically moving for summary rulings in its favor on the issues of liability and amount of principal but leaving the issue of interest, in addition to its counterclaim for attorney's fees, for resolution upon the entry of a final judgment in this case. Id. at p. 2. The Brysons

AO 72A
(Rev. 8/82)

responded in opposition to eHealthscreen's Motion, dkt. no. 71, and, on August 27, 2014, made their Motion for Partial Summary Judgment on Crossclaims and Counterclaims, dkt. no. 59. The Brysons move for a summary ruling on the issue of the validity of the Promissory Note but do not address their crossclaims for injunctive relief and attorney's fees. Dkt. No. 59.

eHealthscreen also filed its Motion for Summary Judgment on all of Plaintiff's claims on August 26, 2014. Dkt. No. 57-1. Plaintiff submitted a response to this Motion, dkt. no. 77, and made its Motion for Partial Summary Judgment on its promissory estoppel and equitable subrogation claims on September 2, 2014, dkt. no. 65-1.

## IX. Plaintiff's Submissions Regarding Its Interest in the Property

In support of its briefing on these motions, Plaintiff has filed several documents that were produced to the other parties during the discovery period, or that were obtained by its counsel during the briefing period and disclosed at that time. See Dkt. No. 63-2; Dkt. No. 77, Ex. B; Dkt. No. 91; Dkt. No. 93, Exs. A–B, G–I.

Specifically, Plaintiff has submitted a copy of its Answers to eHealthscreen's discovery interrogatories, which are dated March 24, 2014, and which were verified under oath as true by DeWayne Chin, an authorized signatory of Fort Asset

AO 72A
(Rev. 8/82)

Administrator LLC, Plaintiff's affiliate.  Dkt. No. 63-2, p. 13.

In response to eHealthscreen's interrogatory regarding any

consideration that Plaintiff paid to Resource in exchange for

its alleged interest in the Property, Plaintiff stated the

following:

> No consideration was given by [Plaintiff] to Resource
> . . . .  Plaintiff presumes consideration was given by
> the secondary market purchaser (who is unknown to
> Plaintiff) to Resource . . . .  Plaintiff presumes
> consideration was given by Thornburg Mortgage
> Securities Trust 2007-5 to this secondary market
> purchaser (unknown to Plaintiff) or one of possibly
> multiple subsequent secondary market purchasers in the
> chain of ownership interest (all of which are unknown
> to Plaintiff up to Thornburg Mortgage Securities Trust
> 2007-5).  FCOF UB Securities LLC & FCOF UST REO LLC
> paid approximately $17 million to the Thornburg
> Mortgage Securities Trust 2007-5 securitization
> trustee for 25 mortgage loans, including the subject
> mortgage loan.  FCOF UB Securities LLC deposited
> mortgage loans, including the subject mortgage loan,
> into a trust that it owned 100% of, FCOF TMST Trust.
> In connection with a financing, FCOF UB Securities LLC
> conveyed ownership of FCOF TMST Trust (including all
> of its assets, which, in turn, included the subject
> mortgage loan), to its affiliate FCOF PWL LLC.  In
> 2011, in connection with [Plaintiff's] securitization,
> FCOF TMST Trust distributed mortgage loans, including
> the subject mortgage loan, to its parent FCOF PWL LLC.
> FCOF PWL LLC sold mortgage loans, including the
> subject mortgage loan, for cash to FORT Asset Funding
> 2011-1 LLC, the securitization depositor.  FORT Asset
> Funding 2011-1 LLC, in turn, deposited mortgage loans,
> including the subject mortgage loan, to [Plaintiff].

Id. at pp. 7-8.

Plaintiff has also filed under seal the Sale and

Administration Agreement between FCOF PWL LLC, FORT Asset

Funding 2011-1 LLC ("FORT Asset Funding"), and Plaintiff.  Dkt.

AO 72A
(Rev. 8/82)

No. 77, Ex. B.  As described in Plaintiff's interrogatory
response, the Sale and Administration Agreement reflects that
its signatories agreed on October 31, 2011, that FCOF PWL LLC
and other sellers would transfer certain mortgage loans to FORT
Asset Funding, and that Fort Asset Funding would sell the same
to Plaintiff.  Id. at Ex. B, p. 13.  The agreement contemplates
the sale, transfer, assignment, and conveyance of the mortgage
loans listed on the Mortgage Loan Schedule attached as Exhibit
A-1 thereto; however, Plaintiff has not included the Mortgage
Loan Schedule with the copy of the agreement filed in this case.
Id. at Ex. B, pp. 31-33, 69.

Plaintiff has also produced the original promissory note
and a certified true copy of the Security Deed executed by the
Brysons in favor of Resource in June 2007.  Dkt. No. 93, Exs. G,
I.  Along with these documents is an original allonge to the
note simultaneously executed by Resource's owner and President
at that time, Michael A. Covino ("Covino").  Id. at Ex. H.  The
allonge describes the Property, the principal balance due on the
note, and the parties thereto, but Covino intentionally left
blank the field entitled, "pay to the order of."  Id.

Additionally, Plaintiff has submitted a copy of a
Corporation Assignment of Deed of Trust that Covino executed
approximately one week later in the presence of a notary and
another witness.  Id. at Ex. B.  The Corporation Assignment of

17

Deed of Trust purports to grant, assign, and transfer Resource's interest in the Property under the Security Deed, but, like the allonge, leaves blank the space for identifying the assignee. Id. Covino has since explained that the assignment "was executed in blank with the understanding that at some point[,] someone would fill it in that was in custody of it and in custody of the note." Dkt. No. 91-1 (Deposition of Covino, hereinafter "Covino Dep."), 42:9-12.

Further, Plaintiff has filed the original Corporation Assignment of Deed of Trust that Covino executed but that Plaintiff's counsel thereafter "completed" by filling in Plaintiff's name as assignee during Covino's deposition on February 12, 2015. Dkt. No. 93, p. 2 & Ex. A. Plaintiff states that its counsel did so "[a]t [its] instruction . . . , and with no objection by . . . Covino, . . . to document the transfer from Resource to Plaintiff in preparation for filing it in the Camden County property records prior to foreclosure." Id. at p. 2. Covino testified that he had no objection to Plaintiff's counsel writing Plaintiff's name and address in the blank space intended for the assignee. Covino Dep., 30:17-22, 32:23-33:9.

Covino nevertheless testified that Resource had ceased all operations in early 2008, and that he had resigned his position as President and sought to dissolve the entity at that time. Id. at 7:18-8:12. When informed at his deposition that Resource

AO 72A
(Rev. 8/82)

remains registered as a corporation in the State of New York, Covino recognized that he "apparently" still holds the position of sole owner. Id. at 8:7-12, 28:10-14. Even so, Covino insisted that he no longer has authority to act on behalf of Resource. Id. at 8:5-18 ("Q: Are you still [P]resident of Resource? A: No, I resigned my position. . . . . Q: Do you still have capacity to act on behalf of Resource? A: No."); see also id. at 28:4-14, 33:18-21.

X.    eHealthscreen's Notice to the Court

On June 10, 2015, eHealthscreen filed a Notice to inform the Court that the Supreme Court of Georgia had granted writ of certiorari in the case of Ames v. JP Morgan Chase Bank, N.A., No. A14A2131 (Ga. Ct. App. Feb. 27, 2015), cert. granted, No. S15G1007 (2015), and would likely take up the issue of standing to challenge the validity of an assignment of a security deed. Dkt. No. 101-1. This Court issued an Order directing the parties to submit briefing regarding the impact, if any, that the Ames decision might have on the disputed issues in this case. Dkt. No. 104. Plaintiff thereafter filed a brief distinguishing the standing issue in Ames from the issues here and urging the Court not to delay deciding the instant motions pending an outcome in that case. Dkt. No. 105. By contrast, eHealthscreen and the Brysons characterize the Ames decision as potentially relevant to eHealthscreen's ability to challenge

AO 72A
(Rev. 8/82)

Plaintiff's interest in the Property, see dkt. nos. 107-08, and the Brysons specifically request that the Court withhold a ruling in this case pending that decision, dkt. no. 108, p. 1.

## STANDARD OF REVIEW

Summary judgment is required where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the suit under the governing law." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A dispute over such a fact is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. In making this determination, the court is to view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. Johnson v. Booker T. Washington Broad. Serv., Inc., 234 F.3d 501, 507 (11th Cir. 2000).

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). To satisfy this burden, the movant must show the court that there is an absence of evidence to support the nonmoving party's case.

AO 72A
(Rev. 8/82)

<u>Id.</u> at 325. If the moving party discharges this burden, the burden shifts to the nonmovant to go beyond the pleadings and present affirmative evidence to show that a genuine issue of fact does exist. <u>Anderson</u>, 477 U.S. at 257.

The nonmovant may satisfy this burden in two ways: First, the nonmovant "may show that the record in fact contains supporting evidence, sufficient to withstand a directed verdict motion, which was 'overlooked or ignored' by the moving party, who has thus failed to meet the initial burden of showing an absence of evidence." <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1116 (11th Cir. 1993) (quoting <u>Celotex Corp.</u>, 477 U.S. at 332 (Brennan, J., dissenting)). Second, the nonmovant "may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." <u>Id.</u> at 1117. Where the nonmovant attempts to carry this burden instead with nothing more "than a repetition of his conclusional allegations, summary judgment for the defendants [is] not only proper but required." <u>Morris v. Ross</u>, 663 F.2d 1032, 1033-34 (11th Cir. 1981) (citing Fed. R. Civ. P. 56(e)).

AO 72A
(Rev. 8/82)

## DISCUSSION

**I.   eHealthscreen's and the Brysons' Cross-Motions on the Crossclaims and Counterclaims (Dkt. Nos. 55, 59)**

eHealthscreen maintains that it is entitled to judgment as a matter of law on the Brysons' crossclaims, as well as the portions of its counterclaims pertaining to Mack Bryson's liability and the amount of principal due on the Promissory Note. Dkt. No. 55-1. eHealthscreen argues that the Promissory Note is valid and enforceable, because it is signed by Mack Bryson, and the Brysons fail to prove their affirmative defense of lack of consideration. Id. at pp. 9-10. According to eHealthscreen, the Promissory Note was supported by both past and future consideration—namely, HSDM's payments to and on behalf of Mack Bryson prior to the time of signing and its promise to continue their relationship and make subsequent payments to him. Id. at pp. 10-11. eHealthscreen notes that although HSDM furnished the consideration for the Promissory Note, eHealthscreen may sustain an action as promisee and third-party beneficiary of the note. Id. at pp. 11-14. eHealthscreen thus requests that the Court find Mack Bryson liable for $883,860, the amount of principal currently owed under the note. Id. at pp. 17-19.

The Brysons contend that summary judgment is warranted in their favor on the issue of the Promissory Note's validity as it

22

pertains to both their crossclaims and eHealthscreen's counterclaims. Dkt. No. 59. The Brysons assert that the Promissory Note is invalid for lack of consideration, because HSDM's past payments to Mack Bryson were a salary, not a loan, and their existing employment agreement already ensured their continued relationship and future payments. Dkt. No. 71, pp. 3–11. Further, the Brysons emphasize that eHealthscreen never employed or made payments to Mack Bryson, and that HSDM and Mack Bryson could not have intended eHealthscreen to be a third-party beneficiary of their employment agreement because it was not in existence when they entered into the contract. Dkt. No. 59, pp. 13-16. Nor is eHealthscreen a third-party beneficiary under the Promissory Note, the Brysons argue, because it cannot be both a promisee, and thus a party, to the contract, in addition to a third-party beneficiary thereof. Dkt. No. 83, pp. 6-7.

In an action on a promissory note under Georgia law, "a claimant may establish a prima facie right to judgment as a matter of law by producing the promissory note and showing that it was executed." Gentile v. Bower, 477 S.E.2d 130, 133 (Ga. Ct. App. 1996) (citing Jay Gleason Advert. Serv., Inc. v. Gleason, 388 S.E.2d 43 (Ga. Ct. App. 1989)). Where a claimant succeeds in demonstrating that a note is prima facie valid, the burden shifts to the obligor to establish an affirmative defense to enforcement. Id. (citing Kelly v. Pierce Roofing Co., 469

AO 72A
(Rev. 8/82)

S.E.2d 469 (Ga. Ct. App. 1996)). Failure of consideration is an affirmative defense, and, if proven, the burden shifts back to the claimant to show the nonexistence of any genuine issue of fact as to the affirmative defense. Id. (citing O.C.G.A. § 9-11-8(c)).

In the case at bar, eHealthscreen demonstrates a prima facie right to judgment by producing a copy of the Promissory Note executed by Mack Bryson in its favor on November 27, 2006. See Dkt. No. 54-2, pp. 1-2; eHealthscreen's SMF 1, ¶¶ 17-18; Brysons' SMF, ¶ 6. While the Brysons raise the affirmative defense of lack of consideration, dkt. no. 71, pp. 3-11, their argument in this regard lacks merit. As eHealthscreen shows, the record contains sufficient evidence that HSDM furnished consideration to support the agreement set forth in the Promissory Note.

The consideration necessary for a valid promissory note is that which is "sufficient to support a simple contract." O.C.G.A. § 11-3-303(b). "[C]onsideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise." Edgar v. Edgar Casket Co., 187 S.E.2d 925, 926 (Ga. Ct. App. 1972). The fact that consideration flows from a person other than the promisee, as in this case, does not affect the promisee's right to enforce the promise. Id. at 927 ("Where A. makes a promise to B., and the

consideration therefor is furnished by C., the promisee, B., may maintain suit thereon." (quoting Hawkins v. Cent. of Ga. Ry. Co., 46 S.E. 82, 85 (Ga. 1903))).[4]

Consideration may consist of "a promise of performance, to the extent the promise has been performed." See O.C.G.A. § 11-3-303(a)(1). Although an agreement may lack consideration when made because the promisee is not bound to comply, "it becomes binding when he subsequently furnishes the consideration contemplated by doing what he was expected to do." Breed v. Nat'l Credit Ass'n, 88 S.E.2d 15, 18 (Ga. 1955) (quoting Brown v. Bowman, 46 S.E. 410 (Ga. 1903)). "[I]f the promisee accomplishes the object contemplated, then the promise is

---

[4] It somewhat misses the mark to focus on whether eHealthscreen, as payee on the Promissory Note, could also be a third-party beneficiary of the same. In a third-party beneficiary situation, "[t]here must be a promise by the promisor to the promisee to render some performance to a third person[,] and it must appear that both the promisor and the promisee intended that the third person should be the beneficiary." Rowe v. Akin & Flanders, Inc., 525 S.E.2d 123, 125 (Ga. Ct. App. 1999) (second alteration in original) (quoting Se. Grading v. City of Atlanta, 324 S.E.2d 776 (Ga. Ct. App. 1984)). As Mack Bryson issued the note promising to pay a specified amount to eHealthscreen, see dkt. no. 54-2, pp. 1-2, eHealthscreen became both the payee and promisee under the note. While HSDM members negotiated the execution of the Promissory Note, there is no dispute that eHealthscreen took delivery of the note and attempted to exercise the right to payment thereunder, see eHealthscreen's SMF 1, ¶¶ 10, 15-16, 29; Brysons' SMF, ¶ 9. See O.C.G.A. § 11-3-105(a) ("'Issue' means the first delivery of an instrument by the maker or drawer, whether to a holder or nonholder, for the purpose of giving rights on the instrument to any person."); Jones v. Phillips, 513 S.E.2d 241, 242-43 (Ga. Ct. App. 1999) (issuance, or delivery, of a promissory note is a prerequisite to enforceability, and production of the note entitles a holder to recover, absent a defense thereto). eHealthscreen is thus a party to the Promissory Note, not a third-party beneficiary thereof, and may sue to enforce Mack Bryson's obligations under the same.

AO 72A
(Rev. 8/82)

rendered valid and binding." Id. (quoting Hall v. Wingate, 126
S.E. 796, 807 (Ga. 1924)).

In return for his promise to pay eHealthscreen a specified
amount, HSDM agreed to continue its relationship with Mack
Bryson and to make further payments to him. See eHealthscreen's
SMF 1, ¶¶ 10, 15-16. The Brysons argue that this agreement
included no undertaking beyond the obligations that HSDM had
assumed at the outset of their employment relationship. See
Dkt. No. 71, pp. 3-11. However, as reflected in the May 6,
2005, letter, HSDM and Mack Bryson had neither defined a fixed
term for their relationship nor contemplated any right to
payment outside of that relationship. See Dkt. No. 55, Ex. A.
As a result, HSDM was not obligated to continue the relationship
and payments and could have terminated Mack Bryson and ceased
further payments at any time. Voyles v. Sasser, 472 S.E.2d 80,
81 (Ga. Ct. App. 1996) (agreement for indefinite term was
terminable at either party's will (citing Morris v. Park
Newspapers of Ga., Inc., 255 S.E.2d 131 (Ga. Ct. App. 1979))).
Indeed, it is undisputed that Mack Bryson signed the note in
November 2006 out of fear that HSDM would do precisely just
that. See eHealthscreen's SMF 1, ¶¶ 10, 17-18. When HSDM
followed through with its agreement to continue to employ Mack
Bryson and pay additional amounts to him, id. at ¶¶ 20-26, the
promise became binding, and the Promissory Note was then

supported by sufficient consideration.  See Breed, 88 S.E.2d at

17-18 (employer's promise of continued employment sufficient

consideration for existing employee's noncompetition agreement

where employee was terminable at will); cf. Glisson v. Glob.

Sec. Servs., LLC, 653 S.E.2d 85, 87 & n.8 (Ga. Ct. App. 2007)

(promise of continued employment did not constitute

consideration for noncompetition agreement where employer was

already contractually obligated to retain employee for term of

years).[5]

That Mack Bryson alleges to have signed the Promissory Note

under duress and out of fear of termination, see eHealthscreen's

SMF 1, ¶¶ 10, 17-18, does not change this result.  Notably, the

Brysons did not raise duress as a defense to eHealthscreen's

counterclaims, see dkt. no. 20.  See Gouldstone v. Life Inv'rs

Ins. Co. of Am., 514 S.E.2d 54, 56 (Ga. Ct. App. 1999) (duress

is affirmative defense).  Even if the Brysons had properly

asserted this defense, their argument would fail, because there

is no evidence suggesting that HSDM made any threats of physical

or other harm that effectively deprived Mack Bryson of his free

will.  See Miller v. Calhoun/Johnson Co., 497 S.E.2d 397, 399

(Ga. Ct. App. 1998) ("'Duress which will avoid a contract must

---

[5]  While the Brysons point out that HSDM's commitment to Mack Bryson
was not explicitly stated in the Promissory Note, dkt. no. 83, p. 7,
it need not have been to constitute valid consideration.  See Riddick
v. Evans, 274 S.E.2d 40, 41 (Ga. Ct. App. 1980) ("A recitation of
consideration in the instrument is not essential to recovery.").

AO 72A
(Rev. 8/82)

consist of threats of bodily or other harm, or other means amounting to coercion, or tending to coerce the will of another, and actually inducing him to do an act contrary to his free will.' . . . . One may 'not void a contract on grounds of duress merely because he entered into it with reluctance, the contract is very disadvantageous to him, the bargaining power of the parties was unequal or there was some unfairness in the negotiations preceding the agreement.'" (quoting Tidwell v. Critz, 282 S.E.2d 104 (Ga. 1981))).

Thus, the undisputed facts show that HSDM's agreement to continue its relationship with and payments to Mack Bryson provided adequate consideration for his promise to pay eHealthscreen the stipulated amount. The Court need not consider whether HSDM's past payments to Mack Bryson constituted additional consideration in support of the Promissory Note. As sufficient consideration was exchanged, the Promissory Note is valid and enforceable by eHealthscreen, and Mack Bryson is liable for any payments due thereunder.

As to the amount of Mack Bryson's liability, the undisputed record facts support a finding that Mack Bryson owes eHealthscreen a principal balance of $883,860. At the time of signing the Promissory Note, Mack Bryson agreed to pay eHealthscreen "the principal sum of . . . $557,581 . . . plus such further sums . . . as listed or to be listed on the

28

Schedule of Loans and Payments attached hereto, together with interest on such principal sums." Dkt. No. 54-2, p. 1. It is undisputed that HSDM made regular payments to Mack Bryson until at least December 20, 2007, and the Schedule of Loans and Payments reflects that the principal balance as of that date was $883,860. eHealthscreen's SMF 1, ¶¶ 27-28.

While Mack Bryson never initialed the final two entries on the schedule, dkt. no. 54-2, p. 5, he does not dispute his receipt of these payments or the accuracy with which they were recorded on the Schedule of Loans and Payments, see eHealthscreen's SMF 1, ¶¶ 25-27. Notably, the Brysons' briefing on the instant motions focuses only on Mack Bryson's liability on the note and does not attempt to challenge eHealthscreen's representations as to the amount of such liability. See Dkt. Nos. 59, 71, 83. Because there is no genuine dispute as to the principal balance owed pursuant to the terms of the Promissory Note, eHealthscreen is entitled to judgment as a matter of law on its counterclaim for $883,860 in principal.

eHealthscreen's Motion for summary judgment on the Brysons' crossclaims and partial summary judgment on its counterclaims is thus **GRANTED**. The Brysons' Motion for Partial Summary Judgment on the crossclaims and counterclaims is **DENIED** in its entirety.

AO 72A
(Rev. 8/82)

## II. Plaintiff's and eHealthscreen's Cross-Motions on Plaintiff's Claims (Dkt. Nos. 57, 65)

eHealthscreen moves for summary judgment in its favor on all of Plaintiff's claims, arguing, in part, that Plaintiff has not proven that it has any rights under the Security Deed that the Brysons granted to Resource. Dkt. No. 57-1, pp. 11-14. Specifically, eHealthscreen argues that the Missing Assignment Affidavit filed in the property records does not meet the statutory requirements to create a presumption that an assignment of that deed to Plaintiff ever occurred. Id. Even if Plaintiff had proven its rights as assignee of that deed, eHealthscreen asserts that Plaintiff's bases for alleging priority and entitlement to damages—namely, breach of contract, promissory estoppel, fraud, and equitable subrogation—lack merit. Id. at pp. 14-32. eHealthscreen further contends that in any event, Plaintiff is not entitled to an award of attorney's fees, because a bona fide controversy exists between the parties. Id. at pp. 32-33.

Plaintiff counters that eHealthscreen, as a stranger to the alleged assignment between Resource and Plaintiff, has no standing to challenge the validity of the same. Dkt. No. 65-1, pp. 11-12. Even so, Plaintiff goes on to argue that its possession of the following documents, which its counsel obtained and produced during the briefing period for these

AO 72A
(Rev. 8/82)

motions, renders eHealthscreen's argument concerning the Missing Assignment Affidavit moot and proves that Plaintiff is the proper assignee of the Resource Security Deed: (1) the original promissory note and allonge, as well as the certified true copy of the Security Deed, executed by the Brysons in favor of Resource; (2) a copy of the Corporation Assignment of Deed of Trust executed in blank by Covino on behalf of Resource; and (3) the original Corporation Assignment of Deed of Trust that Plaintiff's counsel filled in with Plaintiff's name, at Plaintiff's direction and without any objection by Covino, during this litigation. Dkt. No. 93, pp. 1-5. Although Plaintiff contends that its holding of these documents obviates further proof of its interest in the Property, Plaintiff nevertheless argues that it demonstrates the chain of consideration paid for the note and custody of the blank assignment, through its verified Answers to interrogatories discussing the Resource-Thornburg transfer and the subsequent transfers leading up to Plaintiff and its filing of the Sale and Administration Agreement between FCOF PWL LLC, FORT Asset Funding, and Plaintiff. Id. at pp. 3-4. Additionally, Plaintiff claims that it is entitled to judgment as a matter of law on its claims of promissory estoppel and equitable subrogation. Dkt. No. 65-1, pp. 14-28.

31

## A. eHealthscreen's Standing to Challenge Plaintiff's Interest in the Property

As a general matter, one who is not a party to an assignment of a security deed lacks standing to challenge its validity under Georgia law. See Breus v. McGriff, 413 S.E.2d 538, 539 (Ga. Ct. App. 1991); see also McKinley v. Fed. Home Loan Mortg. Corp., No. CV 212-124, 2013 WL 4501327, at *3 (S.D. Ga. Aug. 22, 2013) (concluding that the plaintiff was a stranger to the assignment of a security deed to the defendant and thus lacked standing to challenge it); Bandele v. Deutsche Bank Nat'l Tr. Co., No. 1:11CV4257TWT, 2012 WL 1004990, at *2 (N.D. Ga. Mar. 22, 2012) (same). Courts have applied this principle to preclude a debtor-plaintiff from affirmatively seeking to set aside a foreclosure or obtain other relief from a creditor-defendant based on the alleged invalidity of an assignment to it. See, e.g., McKinley, 2013 WL 4501327, at *3; McFarland v. BAC Home Loans Servicing, LP, No. 1:11CV04061RWS, 2012 WL 2205566, at *3 (N.D. Ga. June 14, 2012). In other cases, courts have found that this rule prevents a debtor-defendant who previously treated a creditor-plaintiff's assignment as valid from later attempting to raise invalidity of the assignment as an affirmative defense. See Sutton v. Bank of Am., N.A., No. 1:11-CV-3765-CAP, 2012 WL 2394533, at *5 (N.D. Ga. Apr. 11, 2012) ("[In Breus, the] debtor was estopped from disclaiming

AO 72A
(Rev. 8/82)

[the] assignee's rights under assignment after treating [the] assignee as having properly acquired the indebtedness." (citing *Breus*, 413 S.E.2d at 539-40)); see also Merchant's Grocery Co. v. Shawnee Mill Co., 72 S.E.2d 797, 800 (Ga. Ct. App. 1952) (finding that the defendant was estopped from challenging the plaintiff's standing to sue for breach of contract because it had dealt with the plaintiff as it had with the assignor of the contract).

However, at least one other district court in Georgia has concluded that this principle does not apply where a party challenges an assignment as a defense, rather than a basis for affirmative relief, and the party has not previously treated the assignment as valid. See LSREF2 Baron, LLC v. Alexander SRP Apartments, LLC, 17 F. Supp. 3d 1289, 1306 (N.D. Ga. 2014). The court in that case reasoned that "[i]t is [the plaintiff] who has the burden of proving its case, and as one seeking to recover on [an assignment], [the plaintiff] has the burden of establishing that it has the legal authority to do so." Id. This reasoning is consistent with the requirement in Georgia that a plaintiff purporting to be an assignee of a contract—and thus the real party in interest with the right to sue to enforce the same—must prove that the assignment actually took place in order proceed with its claim. See, e.g., Hutto v. CACV of Colo., LLC, 707 S.E.2d 872, 874-75 (Ga. Ct. App. 2011); Green v.

Cavalry Portfolio Servs., LLC, 700 S.E.2d 741, 741–42 (Ga. Ct. App. 2010); Wirth v. Cach, LLC, 685 S.E.2d 433, 434–36 (Ga. Ct. App. 2009).

The rule limiting standing to challenge an assignment of a security deed has no application in this case. Plaintiff alleges that its right to sue to determine the priority of the liens on the Brysons' Property derives from its status as assignee of the Resource Security Deed. See Pl.'s SMF, ¶¶ 61-62. eHealthscreen challenges the alleged assignment as a defense to this action, not as a ground for obtaining affirmative relief from Plaintiff. Notably, nothing in the record suggests that eHealthscreen had any interaction with Plaintiff prior to this litigation, much less treated Plaintiff as the proper assignee of the Resource Security Deed. As a result, it appears that eHealthscreen has standing to raise the issue of whether Plaintiff meets its burden of proving that it is the real party in interest with a right to sue on the Security Deed.

The Georgia Supreme Court's decision to grant certiorari in Ames, No. A14A2131, does not disrupt this conclusion. In Ames, the debtor-plaintiffs filed suit to halt the defendant's attempts to foreclose on their property, claiming that their mortgage lender invalidly assigned the security deed executed in its favor to the defendant. See No. A14A2131. The issue

presented to the Georgia Supreme Court on appeal is whether the Georgia Court of Appeals erred in holding that the debtor-plaintiffs lack standing to challenge the validity of the assignment of the security deed to the defendant. See id. Significantly, nothing suggests that the Court will take up the very different question of whether a lienholder-defendant has standing to challenge the existence of an assignment where the plaintiff claims to be the assignee of a security deed and brings suit to determine the priority of their respective interests. The Court, therefore, finds no basis upon which to conclude that the Ames decision will impact eHealthscreen's ability to question Plaintiff's interest in defending against this priority action.[6]

### B. Plaintiff's Proof of the Alleged Assignment

In Georgia, "a security deed which includes the power of sale is a contract[,] and its provisions are controlling as to the rights of the parties thereto and their privies." Montgomery v. Bank of Am., 740 S.E.2d 434, 436-37 (Ga. Ct. App. 2013) (alteration in original). "[A]n action on a contract . . . shall be brought in the name of the party in whom the legal interest in the contract is vested." Hutto, 707 S.E.2d at 874

---

[6] To the extent that the Brysons' briefing on Ames suggests that this case should be stayed pending the Georgia Supreme Court's decision, see dkt no. 108, p. 1, such a request is not properly before the Court, see Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion.") and, even if it were, would be due to be denied for the reasons discussed here.

AO 72A
(Rev. 8/82)

(alteration in original) (quoting O.C.G.A. § 9-2-20(a)). "A party may assign to another a contractual right . . . , including the right to sue to enforce the right," id. (quoting Wirth, 685 S.E.2d at 433); however, an assignee suing to enforce the right must put forth evidence "showing that [it] received a valid assignment of contract rights making it the real party in interest to sue on the contract," Green, 700 S.E.2d at 742 (citing Lau's Corp. v. Haskins, 405 S.E.2d 474 (Ga. 1991), and Wirth, 685 S.E.2d at 433).

Relevant to the assignee-plaintiff's burden is that "an assignment must be in writing" and "must identify the assignor and assignee" for the contractual right to be enforceable by the assignee. Hutto, 707 S.E.2d at 874 (quoting Wirth, 685 S.E.2d at 433). With the respect to the transfer of a security deed in particular, the writing must also "be signed by the grantee, or if the deed has been previously transferred, by the last transferee, and shall be witnessed as required for deeds." Haynes v. McCalla Raymer, LLC, No. 1:11-CV-3149-TWT, 2014 WL 3908433, at *10 (N.D. Ga. Aug. 7, 2014) (citing O.C.G.A. § 44-14-64; In re Cummings, 173 B.R. 959, 962 (Bankr. N.D. Ga. 1994); 2 Ga. Real Estate Law & Procedure § 21-45 (6th ed. 2011); and id. § 21-15 (noting that a security deed must meet all of the requirements applicable to deeds generally, including that it must name the grantor and grantee, include words of conveyance

AO 72A
(Rev. 8/82)

or grant, sufficiently describe the property conveyed, be properly executed and attested, and be delivered)). Where, as here, there have been multiple transfers of a contractual right, there cannot be any "break in the chain of written assignments necessary to establish that [the assignee is] the real party in interest to bring the suit on the contract." Green, 700 S.E.2d at 742 (citing Wirth 685 S.E.2d at 433).

      1. <u>Documents Executed by the Brysons and Resource in 2007</u>

Plaintiff's production of the original promissory note signed by the Brysons in favor of Resource, as well as the original allonge to the note executed in blank by Covino, see dkt. no. 93, exs. G-H, is insufficient to prove that Plaintiff ever received a valid assignment of Resource's security interest in the Brysons' real property. Rights pursuant to a promissory note are distinguishable from those under a security deed. See You v. JP Morgan Chase Bank, 743 S.E.2d 428, 432-33 (Ga. 2013) ("It is true that a promissory note is a negotiable instrument subject to Article 3 of the UCC. It is also true that Article 3 provides generally that only the holder of an instrument is entitled to enforce the instrument. However, it is equally true that, here, [the assignee] does not seek to enforce the note but rather is enforcing its rights under the security deed, which is not a negotiable instrument and is therefore not governed by

37

Article 3. (citations omitted) (citing O.C.G.A. §§ 11-3-104, 11-3-301)). Plaintiff's possession of the note and allonge—even if Plaintiff could prove a valid assignment of the same—does not suggest in any way that Plaintiff ever obtained rights to the Property pursuant to the related Security Deed.

Nor does Plaintiff's holding of a certified true copy of the Security Deed signed by the Brysons in favor of Resource suffice. See Dkt. No. 93, Ex. I. Georgia law is clear that any transfer of a security deed must be in writing and meet certain requirements to be valid. See O.C.G.A. § 44-14-64. Possession of a certified true copy of the original Security Deed falls short of demonstrating that any subsequent, valid assignment of this deed to Plaintiff ever took place.

### 2. Corporation Assignment of Deed of Trust

Plaintiff's evidence of a copy of the Corporation Assignment of Deed of Trust executed by Covino in blank, see dkt. no. 93, ex. B, is insufficient to demonstrate any assignment of the Resource Security Deed to Plaintiff. An assignment of a security deed must identify the grantee, see Haynes, 2014 WL 3908433, at *10, and, therefore, a security deed assigned in blank is invalid, see Bald Mountain Park, Ltd. v. Oliver, 863 F.2d 1560, 1562 (11th Cir. 1989); Etheridge v. Boroughs, 74 S.E.2d 873, 875 (Ga. 1953). Additionally, a valid transfer of a security deed must be signed by the grantee or the

AO 72A
(Rev. 8/82)

last transferee.  See Haynes, 2014 WL 3908433, at *10.  Here,

the Corporation Assignment of Deed of Trust executed by Covino

purports to transfer a security interest to an unidentified

party and is not signed by Plaintiff, the alleged grantee, or

FORT Asset Funding, the last alleged transferee preceding

Plaintiff.  See Dkt. No. 93, Ex. B.[7]  The assignment, therefore,

is incomplete and ineffective to transfer any interest as a

matter of law.

Plaintiff's attempt to have its counsel "complete" the

original Corporation Assignment of Deed of Trust to reflect a

transfer to Plaintiff, see id. at ex. A, does not cure the

deficiencies in this evidence.  "It is settled law that a deed

presigned in blank cannot be completed without authorization

from the grantor."  Bald Mountain Park, Ltd., 863 F.2d at 1562

(citing Etheridge, 74 S.E.2d at 873).  While Covino denied

having any objection to Plaintiff's counsel filling in the

Corporation Assignment of Deed of Trust at his deposition, he

also testified that Resource is now defunct; that he has

resigned his position as President; and that he no longer has

any authority to act on its behalf.  See Covino Dep., 7:18-8:12,

30:17-22, 32:23-33:9.  Under these circumstances, no reasonable

---

[7]  It is unclear whether the reference to the "grantee" in O.C.G.A. §
44-14-64 is intended to refer to the grantee of the assignment or the
original grantee of the security deed.  To the extent that it is the
latter, the Corporation Assignment of Deed of Trust nevertheless fails
because it does not contain Plaintiff's name or the signature of FORT
Asset Funding, the last alleged transferee.

juror could find that Covino's opinion was representative of that of Resource as an entity and thus constituted authorization by the grantor to complete the assignment. Even if it did, the assignment would still fail to contain the signature of FORT Asset Funding, the last alleged transferee of the security interest prior to Plaintiff.

### 3. Chain of Consideration

Plaintiff's submissions regarding the chain of consideration paid for the Resource note and Security Deed also falls short of showing any valid assignment of the Security Deed to Plaintiff. An assignee proves a valid assignment of rights by showing that there is no "break in the chain of written assignments necessary to establish that [it is] the real party in interest." Green, 700 S.E.2d at 742 (emphasis added) (citing Wirth 685 S.E.2d at 433). Moreover, "[t]estimony regarding the contents of business records, unsupported by the records themselves, by one without personal knowledge of the facts constitutes inadmissible hearsay." Nyankojo v. N. Star Capital Acquisition, 679 S.E.2d 57, 60 (Ga. Ct. App. 2009) (quoting Ingles Mkts. v. Martin, 513 S.E.2d 536 (Ga. Ct. App. 1999)). Plaintiff fails to put forth evidence of a chain of written agreements of the Resource Security Deed and, instead, attempts to prove these transfers primarily through its own certified Answers to interrogatories. See Dkt. No. 93, pp. 3-4 & Ex. D.

AO 72A
(Rev. 8/82)

Notably, there is no evidence that the authorized signatory of Fort Asset Administrator LLC who verified these Answers, dkt. no. 63-2, p. 13, has personal knowledge that any of the alleged transfers occurred.

While Plaintiff points to a copy of the Sale and Administration Agreement between FCOF PWL LLC, FORT Asset Funding, and Plaintiff, even this evidence is insufficient to prove the final link in the alleged chain of assignments. An assignment of a security deed must include a sufficient description of the property conveyed. Haynes, 2014 WL 3908433, at *10 (citing 2 Ga. Real Estate Law & Procedure § 21-15). While the Sale and Administration Agreement purports to assign and convey the sellers' interests in the mortgage loans listed on a Mortgage Loan Schedule attached thereto, Plaintiff has neglected to include the Mortgage Loan Schedule with the copy of the agreement filed in this case. See Dkt. No. 77, Ex. B, pp. 31-33, 69. A reasonable juror viewing this evidence could not conclude that FCOF PWL LLC and, in turn, FORT Asset Funding transferred any mortgage lien on the Brysons' Property. See Hutto, 707 S.E.2d at 875 ("[T]he Bill of Sale stated that it was [an] assignment of 'certain accounts' listed in 'Exhibit A'; there is no document attached thereto labeled 'Exhibit A[,] . . . . '[T]his evidence, even together with the reasonable inferences from it, was insufficient to establish [a valid

AO 72A
(Rev. 8/82)

assignment of rights . . . ].'" (last alteration in original) (quoting Nyankojo, 679 S.E.2d at 57)); Wirth, 685 S.E.2d at 491 ("[T]here is no contract or Appendix A appended to the Bill of Sale which identifies [the debtor's] account number as one of the accounts . . . assigned.").[8]

### C. Conclusion

Plaintiff thus fails to come forward with evidence that it is the assignee and thus the real party in interest with respect to the Resource Security Deed. As Plaintiff's priority and damages claims are premised upon its holding of a valid security interest in the Brysons' Property, the Court need not inquire further to conclude that Plaintiff cannot succeed in proving these claims. Rather, because Plaintiff cannot show that it is

---

[8] The Missing Assignment Affidavit filed in the property records, see dkt. no. 57-3, p. 3, likewise fails to satisfy Plaintiff's burden at this stage. A recorded affidavit that meets certain requirements and sets forth facts or circumstances affecting title to land gives rise to a rebuttable presumption that the facts stated therein are true. See O.C.G.A. § 44-2-20. The Missing Assignment Affidavit in this case states that Resource assigned the Security Deed to the Property to Plaintiff, Pl.'s SMF, ¶ 43, but that "[r]epeated attempts to locate the original assignment or to obtain the replacement assignment have failed," dkt. no. 57-3, p. 3. As the record reflects, Plaintiff's counsel later obtained the documents pursuant to which Plaintiff alleges to have received an assignment of the Security Deed, thus rebutting any presumption that the assignment cannot be found because it was lost or never prepared. Indeed, Plaintiff recognizes that its subsequent production of these documents renders this basis for proving its interest as assignee moot. See Dkt. No. 93, p. 5 ("Given that the original assignment, now completed, has been put in the record, eHealthscreen's arguments about the validity of the Missing Assignment Affidavit[ and] the existence of the assignment[] . . . are now moot.").

AO 72A
(Rev. 8/82)

the proper party to pursue these claims, summary judgment in favor of eHealthscreen is appropriate.  See Benson v. Asset Acceptance, LLC, 712 S.E.2d 83, 84 (Ga. Ct. App. 2011) (citing Hutto, 707 S.E.2d at 875; Green, 700 S.E.2d at 742; and Wirth, 685 S.E.2d at 435-36).  eHealthscreen's Motion as to Plaintiff's claims is thus **GRANTED**, and Plaintiff's cross-Motion on the same is **DENIED**.

### CONCLUSION

In light of the foregoing, eHealthscreen's Motion for Summary Judgment on Crossclaims and for Partial Summary Judgment on Counterclaims to Crossclaims (dkt. no. 55) is **GRANTED** in its entirety.  The Brysons' Motion for Partial Summary Judgment on Crossclaims and Counterclaims (dkt. no. 59) is **DENIED**.  The Clerk of Court is **DIRECTED** to enter the appropriate judgment on the Brysons' crossclaims against eHealthscreen and to terminate the Brysons as Cross Claimants and eHealthscreen as a Cross Defendant in this case.  With respect to eHealthscreen's counterclaims, the Court finds only that eHealthscreen is entitled to a ruling in its favor on the issues of liability and amount of principal, and, therefore, these claims and parties remain pending for resolution of interest and attorney's fees at a later date.

Further, eHealthscreen's Motion for Summary Judgment Against Plaintiff (dkt. no. 57) is **GRANTED**, and Plaintiff's

AO 72A
(Rev. 8/82)

Motion for Partial Summary Judgment against this Defendant (dkt. no. 65) is **DENIED**. The Clerk of Court is **DIRECTED** to enter the appropriate judgment as to these claims and to dismiss eHealthscreen as a Defendant in this case. As Plaintiff named the Brysons as Defendants based only the possibility that Plaintiff's claims against eHealthscreen might have impacted their ownership interest in the Property, Plaintiff is hereby **ORDERED** to notify the Court **within fourteen (14) days** of the date of this Order as to whether it has any claim against the Brysons with which it seeks to proceed in this action.

    **SO ORDERED**, this 19TH day of April, 2016.

                                     LISA GODBEY WOOD, CHIEF JUDGE
                                     UNITED STATES DISTRICT COURT
                                     SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)